**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**APONTE AMARELIS, et al.,**

                        **Plaintiffs,**

**-vs-**                                             **Case No. 6:13-cv-54-Orl-31KRS**

**NOTTER SCHOOL OF CULINARY ARTS,
LLC, et al.,**

                        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** PLAINTIFFS' MOTION . . . TO CERTIFY CLASS ACTION (Doc. No. 27)
>
> **FILED:** June 28, 2013

**I. PROCEDURAL HISTORY.**

On January 9, 2013, Plaintiffs Aponte Amarelis, Nicole Coppola, Ruby Ignacio, Chester Loftis, Cinnamon McCloud, James Taylor, Rhonda Wilson, Shanae Wilson, Aimee Neumann and Catherine Neumann (collectively the "Named Plaintiffs") filed a Class Action Complaint on behalf of themselves and others similarly situated. They named as Defendants the Notter School of Culinary Arts, LLC (the "Notter School"), Beverly L. Karshner and Ewald Notter. Doc. No. 1.

They seek to have the Court certify four different classes pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3), as follows:

**Class I**: "All students who are or were enrolled in Defendants' culinary programs at the Notter School during the relevant time period[1] . . . ." Doc. No. 1 ¶ 39

**Class II** "All students who enrolled in Defendants' culinary programs at the Notter School and withdrew from the Notter School prior to the completion of the program . . . ." *Id.*

**Class III** "All students who are enrolled in Defendants' culinary programs at the Notter School, but are unable to continue the program due to the Notter School's closing . . . ." *Id.*

**Class IV** "[A]ny person, parent, or relative of any student enrolled at Notter School during the relevant time period that signed or co-signed a student loan on behalf of the student enrolled at the Notter School during the relevant time period." *Id.*[1]

I will refer to Classes I, II and III, collectively, as the "Student Classes," and to Class IV as the "Parent Class."

---

[1] The Named Plaintiffs did not allege the "relevant time period."

The complaint alleged eleven causes of action, of which nine remain pending[2]:

Count I: Declaratory and Injunctive Relief (and Damages) for Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Defendant Notter School by members of all Classes;

Count II: Breach of Implied Covenant of Good Faith and Fair Dealing against Defendant Notter School by members of the Student Classes;

Count III: Breach of Contract against Defendant Notter School by members of the Student Classes;

Count IV: Unjust Enrichment apparently against Defendants Karshner and the Notter School by members of all Classes;

Count V: Breach of Fiduciary Duty against Defendant Karshner by members of all Classes;

Count VII: Civil Conspiracy against Defendant Karshner by members of all Classes;

Count VIII: Conversion against Defendant Karshner by members of all Classes;

Count X: Fraud in the Inducement apparently against Defendant Karshner and the Notter School by members of all Classes;

Count XI: Violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") apparently against Defendant Karshner and the Notter School by members of all Classes.

The Named Plaintiffs seek declaratory and injunctive relief under FDUTPA and damages, among other remedies.

The Notter School attempted to answer the complaint through a document signed by Defendant Karshner. Doc. No. 10. Because an entity cannot appear except through counsel, this document was stricken and the Notter School was given additional time to appear through counsel.

---

[2] On July 17, 2013, the Named Plaintiffs dismissed their claims against Defendant Notter and he, in turn, dismissed his crossclaim against Defendant Karshner. Doc. Nos. 29-30. Only the Notter School and Karshner remain as Defendants in this case.

-3-

Doc. No. 11. When it failed to do so, the Clerk of Court entered a default against the Notter School. Doc. No. 17.

Because it was unclear whether the document signed by Karshner was intended to be an answer, a motion to dismiss or some other type of filing, the Court gave Karshner additional time to respond to the complaint. Doc. No. 11. When Karshner did not respond within the required time, the Clerk of Court entered a default against her. Doc. No. 18.

## II. ALLEGATIONS OF FACT.

The Named Plaintiffs allege that the Notter School enrolled hundreds of students from across the United States and internationally. Doc. No. 1 ¶ 48. In order to enroll as many students as possible, the Defendants unengaged in unfair, unconscionable, and deceptive practices including making false representations about (1) the annual salary graduates could earn, (2) job placement rates and assistance to find employment, (3) qualification of instructors, (4) quality of facilities and equipment used in teaching, and, (5) availability of internships and externships. *Id.* ¶¶ 62, 66-71, 94-109, 145. The Named Plaintiffs further allege the misrepresentations were also made in the Enrollment Agreements signed by the Named Plaintiffs. *Id.* ¶¶ 155, 210.

On some occasions, students would be required to have family members co-sign their student loans. *Id.* ¶ 85. Prospective students were also not adequately advised about their student loan debt and the consequences of failing to make the necessary payments. *See, e.g., id.* ¶¶ 72-78, 83-84, 87,146.

The Named Plaintiffs also allege that "[m]any of the student loan refunds due to students were used by Notter School for the Defendants' gain and at the Plaintiffs', and the Classes', loss." *Id.* ¶¶

81, 126. Specifically, the Named Plaintiffs allege that Ewald Notter and Defendant Karshner wrongfully "pocketed" the tuition funds paid to the Notter School. *Id.* ¶ 127.

Ruby Ignacio avers that she was a student at the Notter School in the "Baking and Pastry" Program from April through September 2011. Doc. No. 27-1 ¶ 3. During that time, there were three classes of students in the "Baking and Pastry" program. *Id.* ¶ 4. Each of the day classes had approximately twenty students. *Id.* ¶ 5.

Nicole Coppola averred that she was enrolled at the Notter School in the "Baking and Pastry" Program from August through September 2012. Doc. No. 27-2 ¶ 3. During that time, there were three classes of students in that program. *Id.* ¶ 4. Approximately twenty-five students were in one of the day classes and approximately thirty-five students were in the other day class. *Id.* ¶ 5.

Ewald Notter was marketed as a world class champion of the pastry arts. *Id.* ¶ 92. He left the Notter School in July 2012. *Id.* ¶ 91. The Notter School closed on or about November 4, 2012. *Id.* ¶ 125. Neither Notter nor Defendant Karshner told the Named Plaintiffs or other putative class members of the impending closing of the school. *Id.* ¶ 126. On December 5, 2012, the Notter School was denied reaccreditation. *Id.* ¶ 128. Defendants Notter and Karshner were subsequently debarred by the accrediting body. *Id.* ¶ 129.

### III.   APPLICABLE LAW.

Fed. R. Civ. P. 23(a) "states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and

adequately protect the interests of the class')...." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

In addition to satisfying all of the requirements of Rule 23(a), a plaintiff seeking class certification must establish that one of the three provisions of Rule 23(b) has been met.

"Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class,' Fed. R. Civ. P. 23(b)(1)(A), or would 'as a practical matter be dispositive of the interests' of nonparty class members 'or substantially impair or impede their ability to protect their interests,' Rule 23(b)(1)(B)." *Id.* at 614.

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Id.*

Rule 23(b)(3) provides for actions for damages "designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Id.* at 614-15 (citations omitted). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* at 615. Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria:

> "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

*Id.* at 616.

**IV. ANALYSIS.**

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Certification is proper only if the district court is satisfied, after rigorous analysis, that the requirements of Rule 23(a) are satisfied. Frequently this rigorous analysis will entail some overlap with the merits of the Named Plaintiffs' claims. Actual, not presumed, conformance with Rule 23(a) is indispensable. *Id.* (citation omitted).

Other than some evidence of numerosity, the Named Plaintiffs have presented no evidence of any of the Rule 23(a) or (b) factors. The allegations of the complaint, and the motion for class certification, do not show, in fact, that the requirements of Rule 23 can be met.[3] Because the motion

---

[3] Because Defendants Notter School and Karshner are in default and the claims against Ewald Notter have been dismissed, the Court has not yet determined whether the remaining causes of action each state claims on which relief can be granted. While I do not consider the merits of each claim for purposes of this Report and Recommendation, there is a substantial question whether the complaint alleges sufficient well-pleaded facts to support a finding of liability as to each cause of action. For example, it appears that the RICO count, the sole federal cause of action, fails to state a claim on which relief can be granted. The Named Plaintiffs do not identify the alleged RICO enterprise with any specificity, and the allegations of the complaint do not appear to meet the heightened pleading standard required for RICO claims based on fraud. *See, e.g., Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010). Because there are also no allegations supporting the exercise of jurisdiction by this Court under the Class Action Fairness Act, the Court may wish to require counsel for Plaintiffs to address why the RICO claim should not be dismissed for failure to state a claim on which relief can be granted and why the Court should not decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 before permitting further litigation on class certification. *See, e.g., Vereen v. Everett*, No. 1:08-cv-1969-RWS, 2010 WL 123054 (N.D. Ga. Jan. 7, 2010)(Court considered whether it could exercise subject matter jurisdiction as to a defendant in default).

is woefully insufficient in both fact and law, I will review examples of the inadequacies rather than addressing each problem in detail at this early stage of the case.

   A.   *Rule 23(a) Factors.*

      **1.   Numerosity**.

The Eleventh Circuit has observed that "'less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors.' . . ." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266-67 (11th Cir. 2009) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). "[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, [the parties] need not show the precise number of members of the class." *Id.* at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)).

As noted above, the Named Plaintiffs seek to certify four different classes. Named Plaintiffs Nicole Coppola and Ruby Ignacio are alleged to be members of both Class I and Class II, which raises the question why these classes should be separately designated. Doc. No. 1 ¶¶ 17, 18, 25, 26.[4] In any event, Ignacio avers that during April to September 2011, at least forty students attended classes at the Notter School. Coppola avers that during August and September 2012, there were at least sixty

---

[4] A preliminary requirement for class certification is that the Named Plaintiffs demonstrate the existence of a class that can be precisely defined. *See Grillasca v. Hess Corp.*, No. 8:05-cv-1736-T-17TGW, 2007 WL 2121726, at * 5 (M.D. Fla. July 24, 2007) (citation omitted), *motion to reconsider granted in part on other grounds*, 2007 WL 2702334 (M.D. Fla. Sept. 14, 2007). As noted above, the proposed Classes are not precisely defined both because Named Plaintiffs and putative class members may belong to more than one proposed class and because the "relevant dates" in the class definitions are not stated.

students attending the Notter School. These affidavits are sufficient to support a numerosity finding as to Class I and Class II.

There is no evidence of the number of members of proposed Class III (students who were unable to complete culinary programs due to closure of the Notter School) or Class IV (individuals who signed or co-signed student loans for students of the Notter School). Accordingly, numerosity has not been shown for these proposed classes.

### 2. **Commonality**.

The United States Supreme Court's decision in *Dukes* explains the commonality requirement of Rule 23(a)(2). In that case, the Court noted that "the crux of this case is commonality – the rule requiring a plaintiff to show that 'there are questions of law and fact common to the class.'" *Id.* at 2550-51 (quoting Rule 23(a)(2)).

> That language is easy to misread, since "[a]ny competently crafted complaint literally raises common 'questions . . . .'" Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury . . . ." This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend on a common contention . . . . That common contention . . . must be . . . capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke . . . .

*Dukes*, 131 S. Ct. at 2551 (internal citations omitted). "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Accordingly, for this case to satisfy the commonality requirement of Rule 23(a), the Named Plaintiffs must identify a common question of law or fact that "is central to the validity of each of the claims . . . ." *Id.* at 2551. The Named Plaintiffs appear to rely primarily on an alleged policy of Defendants "of misrepresenting, among other things, the quality of education the Notter School provided as well as the future career prospects graduates of Notter School could expect to achieve" as the common issue. Doc. No. 27 at 13. The Named Plaintiffs do not discuss the elements of their varied claims, much less show how the determination that the Defendants had a policy of misrepresentation would establish an element of each of their claims against each named Defendant.

Moreover, the various causes of action raise many issues that are not common to all of the Named Plaintiffs. To the extent that putative class members were not in Florida when they received allegedly fraudulent representations on which they relied, the laws of other fora may apply to the claim of unfair and deceptive trade practices. *See, e.g.,* Doc. No. 27 at 18 (citing the laws of Illinois, Michigan, Pennsylvania and Washington); *see also Rebman v. Follett Higher Educ. Grp., Inc.*, 248 F.R.D. 624, 631 (M.D. Fla. 2008). To the extent that the causes of action require individual proof of reliance on the allegedly fraudulent representations and practices, the need for such individualized proof also undermines a finding of commonality. *See, e.g., Black Diamond Props., Inc. v. Haines*, 940 So. 2d 1176 (Fla. 5th Dist. Ct. App. 2006) (reversing Circuit Court certification of a class in which individual proof of reliance on false statements would be required); *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 321-22 (M.D. Fla. 1997) (denying motion for class certification on fraud in the inducement because proof of individual reliance on specific false representation undermined commonality and typicality) (citations omitted). Finally, some of the causes of action require proof of facts that are not common to even all of the putative class members who assert the claim. For

example, Count V would require different evidence to establish that Karshner had a fiduciary duty to members of the Student Classes than would be required to establish that Karshner had a fiduciary duty to members of the Parent Class. *Cf. McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1226 n. 13 (11th Cir. 2002) (citations omitted) (finding no presumed fiduciary relationship between a lender and a borrower under common law, and no duty of a lender to disclose loan information to parents of college-bound students).

Therefore, the Named Plaintiffs have not carried their burden of establishing commonality.

### 3. Typicality.

"'[T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence.'" *Dukes*, 131 S. Ct. at 2551 n. 5 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). "'[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Vega*, 564 F.3d at 1275 (quoting *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1322 (11th Cir. 2008)).

While typicality does not require that all putative class members share identical claims, the claims or defenses of the class and class representatives must arise from the same event or pattern or practice and be based on the same legal theory. *See, e.g., Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

In the present case, the different causes of action arising from different legal theories based on different facts asserted by various combinations of the Named Plaintiffs against various combinations of the remaining Defendants undermine a finding of typicality at this juncture. Only three of the nine remaining claims are asserted by all Named Plaintiffs against both of the remaining Defendants: Count IV -- Unjust Enrichment, Count X -- Fraud in the Inducement, and Count XI -- RICO. The FDUTPA claim (Count I) is asserted by all of the Named Plaintiffs only against the Notter School. The breach of fiduciary duty (Count V), civil conspiracy (Count VII), and conversion (Count VIII) claims are asserted by all of the Named Plaintiffs only against Karshner. Fragmenting the claims even further, the breach of good faith and fair dealing claim (Count II) and breach of contract claim (Count III) are asserted only by Named Plaintiffs who are members of one or more of the proposed Student Classes against only the Notter School. Because each of these causes of action has different elements that must be established by different groupings of Named Plaintiffs often against one or the other, but not both, Defendants, each Named Plaintiff has not carried his or her burden of showing that his or her claims are typical of the claims of all of the other Named Plaintiffs or of the putative class members. Additionally, there are four separate proposed classes, three of which are composed of Notter School students and one of which is composed of individuals who signed or cosigned student loans. The allegations of the complaint are too vague for the Court to conclude that the claims of the class representative for and members of the Parent Class are typical of the claims of the class representatives for and members of the Student Classes.

### 4. Adequacy of Representation.

The adequacy of representation factor addresses whether the Named Plaintiffs will fairly and adequately protect the interests of the class and serves to uncover conflicts of interest between the

Named Plaintiffs and the class they seek to represent. *Amchem*, 521 U.S. at 625 (citation omitted). The Named Plaintiffs must demonstrate that each of them would be adequate representatives; there is no presumption of adequacy. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001)).

In one paragraph of the motion, counsel for the Named Plaintiffs represents, without any supporting evidence, that the Named Plaintiffs are committed and passionate and that their interests are not antagonistic to other putative class members. Doc. No. 27 at 15. It is odd that none of these committed and passionate Named Plaintiffs prepared a declaration supporting their counsel's representations; even Ignacio and Coppola failed to include statements about why they would be adequate class representatives in the declarations they submitted. Accordingly, the Named Plaintiffs have failed to carry their burden of showing that each of them would be adequate class representatives.

### B. Rule 23(b) Factors.

Counsel for the Named Plaintiffs contends that the proposed class action could be certified under all of the Rule 23(b) provisions, but he states that "certification under [Rule 23](b)(2) is the most appropriate . . . ." Doc. No. 27 at 15. Counsel's argument fails as a matter of law, because the Supreme Court has held that certification under Rule 23(b)(2) is not appropriate when each class member would be entitled to an individualized award of money damages. *Dukes*, 131 S. Ct. at 2557.

Counsel argues, in the alternative, that the proposed class action could be certified under Rule 23(b)(3) based on common issues that will predominate over individual issues. "In order to determine whether common questions predominate, 'we are called upon to examine the cause[ ] of action asserted in the complaint on behalf of the putative class.'" *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211

-13-

F.3d 1228, 1233 (11th Cir. 2000) (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984)). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (citation omitted), *abrogation on other grounds recognized by DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012) (citing *Bridge v. Phoenix Bond &Indem. Co.*, 553 U.S. 639 (2008)).

As discussed above, the Named Plaintiffs have not established commonality or presented evidence that would allow the Court to conclude that individual issues and choice of law questions would not predominate over common questions of law and fact. Therefore, they have failed to carry their burden that certification is appropriate under rule 23(b)(3).[5]

*C.  Rule 23(g) -- Appointment of Class Counsel.*

Rule 23(g) sets forth the standards for appointment of class counsel. Counsel for the Named Plaintiffs offered only unsupported representations about his ability to serve as class counsel. Doc. No. 27 at 15. The deficiencies in the motion for class certification and lack of supporting evidence undermine those representations. Nonetheless, because I recommend that a class not be certified, the Court need not determine whether the Named Plaintiff's attorney would be adequate class counsel.

---

[5] In the motion, counsel does not argue that certification under Rule 23(b)(1) would be proper, and there is no evidence to support certification under that provision.

## V. RECOMMENDATION.

For the foregoing reasons, I respectfully recommend that the Plaintiffs' Motion . . . to Certify Class Action (Doc. No. 27) be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 8th, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy